

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ENTERED
01/20/2011

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| BARBARA A. EASLEY, | ) | CASE NO. 10-32981-H3-13 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| BARBARA A. EASLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV. NO. 10-3173 |
| | ) | |
| ALEXANDRIA INVESTMENT | ) | |
| GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a trial in the above captioned adversary proceeding. The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Barbara A. Easley ("Debtor") purchased a 2007 Dodge Charger from Alexandria Investment Group, Inc., d/b/a Amazon Auto Sales ("Defendant") on January 30, 2010. Debtor financed an amount of $11,847.44. The retail installment contract called for

Debtor to make three deferred down payment installments of $730 each, followed by 35 monthly payments of $450 each, and a final monthly payment of $309.31.  (Debtor's Exhibit 1).

Prior to purchasing the Dodge, Debtor had purchased a 1995 Cadillac from Defendant.  Andrew Mounir, the president of Defendant, testified that on March 16, 2010, Debtor owed Defendant $510 on the purchase of the Cadillac.

On or about March 15, 2010, Defendant repossessed the Dodge.  Defendant generated a letter, dated March 16, 2010, notifying Debtor that she was in default, and that Defendant would retain the Dodge in full satisfaction of the debt under the retail installment contract, unless Debtor objected in writing within 20 days.  Although the letter was generated on March 16, 2010, it was not mailed to Debtor until March 19, 2010.  (Defendant's Exhibit 6).

On March 19, 2010, Debtor made a payment of $730.  Debtor testified that the $730 payment she made was the third of the three deferred down payment installments due under the contract.  Debtor testified that she had previously made the other two installment payments.

On March 19, 2010, Defendant refused to release the Dodge to Debtor.  Mounir testified that Defendant applied the $730 payment, $510 to the amount that remained due on the Cadillac, and the remaining $220 on the Dodge.

On April 5, 2010, 20 days after the date of the March 16, 2010 letter, Defendant sold the Dodge to a third party.

On April 6, 2010, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On the same date, Debtor's counsel sent to Defendant a facsimile notice of the commencement of the instant Chapter 13 case. (Debtor's Exhibit 4).

In Debtor's schedules, Debtor valued the Dodge in the amount of $16,190. (Docket No. 10, Case No. 10-32981-H3-13).

On April 8, 2010, Debtor's counsel sent to Defendant by facsimile a letter demanding return of the Dodge. (Debtor's Exhibit 5).

On April 15, 2010, Debtor filed the complaint in the instant adversary proceeding. In the complaint, Debtor sought turnover of the Dodge, and sought damages based on an alleged willful violation of the automatic stay, a finding of criminal contempt against Defendant, and damages for conversion of the Dodge.

Mounir testified that he learned of the filing of Debtor's Chapter 13 case on April 6, 2010. He testified that, shortly after he learned that the case had been filed, he attempted to contact the third party purchaser of the Dodge, in order to get it back. He testified that he also attempted to obtain legal advice regarding Defendant's responsibilities. He

testified that Defendant had a contract for prepaid legal services. He testified that the provider under that contract notified him on Friday, April 16, 2010 that services related to Debtor's Chapter 13 case were not covered under Defendant's contract for prepaid legal services.

Mounir testified that Defendant had the Dodge on April 8, 2010. He testified that Defendant contacted Debtor's counsel, and arranged to turnover the vehicle as soon as Debtor provided proof of insurance.[1] He testified that Debtor first provided proof of insurance on April 20, 2010. He testified that Defendant turned over the Dodge to Debtor on April 20, 2010.

Debtor testified that, during the fourteen day period when she did not have the Dodge, she was required to rent a car, at a cost of $289. She testified that her personal belongings, consisting of music CDs, jumper cables, shoes, and a flashlight, were in the Dodge when it was repossessed, and were not returned to her. She testified that the value of the CDs is $100, the value of the jumper cables is $80, the value of the shoes is $59, and the value of the flashlight is $15.[2]

---

[1] Defendant's communication report reflects that this conversation took place on April 16, 2010. (Defendant's Exhibit 7).

[2] Debtor also testified that the tires on the Dodge when it was returned to her were not the same as those on the Dodge when it was repossessed. She testified she spent $115 to replace three of the tires. Mounir testified that Defendant did not change the tires on the vehicle. The court finds that Debtor's

Conclusions of Law

Under Section 362(k) of the Bankruptcy Code, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  The party seeking damages has the burden of proof as to both injury by a willful violation of the stay and damages.  In re Mullican, 417 B.R. 389 (Bankr. E.D. Tex. 2008); In re Nixon, 419 B.R. 281 (Bankr. E.D. Pa. 2009).

There are three elements for an action under Section 362(k):  the defendant must have known of the existence of the stay; the acts must have been intentional; and the acts must have violated the stay.  In re Chesnut, 422 F.3d 298 (5th Cir. 2005); In re Repine, 536 F.3d 512 (5th Cir. 2008).

Retention postpetition of collateral repossessed prepetition, in which a debtor retains an interest, violates the automatic stay.  Such a violation is willful if the creditor continued to withhold possession of the vehicle deliberately and with knowledge of the bankruptcy petition.  Mitchell v. BankIllinois, 316 B.R. 891 (S.D. Tex. 2004).[3]

---

proof on this issue is too speculative on which to allow recovery.

[3] The court notes that, ordinarily, sale of the property cuts off a debtor's interest in the property.  However, under Section 9.610-9.612 of the Texas Business and Commerce Code, commercially reasonable notice must be provided to the debtor.  In the instant

In the instant case, Defendant knew of the filing of the bankruptcy petition, and yet intentionally retained the Dodge for two weeks. The court concludes that Defendant willfully violated the automatic stay.

On the question of actual damages, Debtor presented evidence supporting an award of $543.00, not including attorney fees and costs.[4] The court did not take evidence on the question of attorney fees. Counsel for Debtor argued that a reasonable attorney fee is approximately $19,000.

The attorney fees awarded under Section 362(k) of the Bankruptcy Code must bear a reasonable relationship to the amount in controversy. Mitchell v. BankIllinois, 316 B.R. 891 (S.D. Tex. 2004) (citing Mid-Continent Cas. Co. v. Chevron Pipe Line Co., 205 F.3d 222 (5th Cir. 2000) and Jerry Parks Equipment Co. v. Southeast Equipment Co., 817 F.2d 340 (5th Cir. 1987)).

In the instant case, Debtor initially financed an amount of $11,847.44 on January 30, 2010, and had made only three payments prior to bankruptcy. The creditor retained the vehicle for two weeks. The debtor's actual damages exclusive of attorney fees total $543.00. The court will set an additional evidentiary

---

case, the notice providing that Defendant intended to dispose of the Dodge 20 days after the notice was sent was not reasonable, where Defendant disposed of the Dodge 22 days after the notice was drafted, but only 19 days after the notice was sent by mail.

[4]This amount includes the $289 for car rental, $100 for CDs, $80 for jumper cables, $59 for shoes, and $15 for the flashlight.

hearing on the question of a reasonable attorney fee, based on a reasonable relationship to the amount in controversy.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas January 20, 2011.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE